# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| THASHA A. BOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:25-cv-00333 |
| ) | Judge William L. Campbell, Jr. |
| ALAN L. JAKES, LIVIA WALKER, ) | Mag. Judge Jeffery S. Frensley |
| DORINDA WALKER, KEVIN MILLER, ) | |
| PAUL HOLDER REALTY & AUCTION, ) | |
| CHARLES R. MULLINS, RONALD RAY ) | |
| TALBERT, and DOES I-X, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Pending before the Court is a Motion to Dismiss filed by Defendant Charles R. Mullins ("Mr. Mullins") (Docket No. 15) and supporting Memorandum of Law (Docket No. 16). Plaintiff filed a Response in Opposition (Docket No. 29) that Mr. Mullins replied to (Docket No. 31). For the reasons set forth herein, the undersigned **RECOMMENDS** that the Motion to Dismiss the claims against Mullins be **GRANTED**.

Also before the Court are three separate motions for transfer of venue (Docket Nos. 10, 13, 26). Following review of the record, the undersigned **RECOMMENDS** that these Motions for Transfer of Venue be **GRANTED,** and the action be **TRANSFERRED** to the Eastern District of Tennessee.

## II. BACKGROUND

On March 25, 2025, pro se Plaintiff Thasha Boyd ("Ms. Boyd") filed this action against Mr. Mullins and several named and unnamed defendants[1]. Docket No. 1. In her Complaint (Docket No. 1), Ms. Boyd alleges that each defendant violated or conspired to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Docket No. 1, pp. 53–56. In addition to these federal claims, Ms. Boyd alleges five related state claims against Mr. Mullins or some subset of the defendants. *Id.* at 53–63. While Ms. Boyd and most of the defendants[2] are engaged in an ongoing case at Warren County Chancery Court, Mr. Mullins is not a named defendant in that case. Docket No. 1-1. However, Ms. Boyd asks that the Court exert supplemental jurisdiction over the pending action because "both the federal and state claims are based on sufficiently similar facts." Docket No. 4, pp. 1–2.

Against all defendants, Ms. Boyd claims:

> 2. Defendants, and others known and unknown, over the span of over four years, have engaged in an unchecked criminal "Enterprise" in pursuit of power, influence and profit through the fraudulent purchase and resale of homes/properties; and, services associated with those purchases/resales – designed to prey upon vulnerable individuals and encourage others to join the Enterprise to perpetuate illegal acts onto others.
>
> . . .
>
> 5. PHRA Defendants'[3] storefront, Paul Holder Realty & Auction, forms the business conduit of the Enterprise. Upon information and belief, Jakes depends(ed) on PHRA Defendants to recruit others [i.e. Mullins and Talbert] to the Enterprise and commit illegal acts in furtherance of the objectives [power, influence and profit] of the

---

[1] These defendants include Alan L. Jakes, Livia Walker, Dorinda Walker, Kevin Miller, Paul Holder Realty & Auction ("PHRA"), Ronald Ray Talbert, and John Does I-X.
[2] Defendants Alan Jakes, PHRA, Linda Walker, Dorinda Walker, and Kevin Miller were named in Ms. Boyd's state court complaint.
[3] Ms. Boyd uses the term "PHRA Defendants" to refer to Livia Walker, Dorinda Walker, Kevin Miller, and PHRA. Because all parties have adopted this language to address these named defendants so will the Court for clarity.

Enterprise.

Docket No. 1, p. 2–3.[4]

In essence, Ms. Boyd claims that the defendants are engaged in a criminal enterprise where they purchase inexpensive property, improperly renovate the property without permits, misrepresent the property through official appraisal reports, and sell the property for a significant mark-up without properly disclosing pertinent defects about the property. *See* Docket No. 1, pp. 12–14. In August 2022, Ms. Boyd purchased real property ("Subject Property") from Defendant Alan Jakes ("Mr. Jakes") through a Veterans Affairs ("VA") guaranteed mortgage loan. *Id.* at 7, 25. Mr. Jakes, a contractor, purchased that property from Homeland Community Bank, where Defendant Ronald Talbert ("Mr. Talbert") is the Director, President, and CEO. *Id.* at 10. Mr. Jakes renovated the Subject Property and listed it with Paul Holder Realty & Auction ("PHRA"). *Id.* at 10. Before Ms. Boyd purchased and took possession, Mr. Mullins was assigned to appraise the Subject Property. *Id.* Defendants Dorinda Walker, Linda Walker, and Kevin Miller are real estate agents for PHRA who assisted Ms. Boyd with her purchase. *Id.* at 7.

With respect to Mr. Mullins, Ms. Boyd's Complaint alleges the following:

> 90. On September 7, 2022, Mullins issued a Uniform Residential Appraisal Report ("Appraisal"), which appraised the Subject Property as of September 7, 2022, at $212,000.00. A true and correct copy of the negligent Appraisal is attached hereto as Exhibit A-2.
>
> 91. Mullins' Appraisal was predicated upon the "Sales Comparison Approach" – where per the Appraisal's "Analysis of prior sale or transfer history of the subject property and comparable sales", Mullins' Appraisal states: "The subject shows a prior sale on 04/14/2022 for $90,000 & no other prior sales recorded for the subject in the past 36 months. Comp #2 shows a prior sale on 11/12/2020 for $8,000 & no other prior sales recorded for the comparable properties in the past 12 months."

---

4 Quotations from the Complaint are verbatim.

92. Relying on Mullins' Appraisal, Plaintiff took out a United States Department of Veterans Affairs ("VA") guaranteed mortgage loan from Mortgage Research Center, LLC (DBA "Veterans United Home Loans"), closed on the Contract, and acquired the Subject Property.

93. Unfortunately, and unbeknownst to Plaintiff, Mullins' Appraisal did not include the January 4, 2022, sales/transfer of the Subject Property from the United States Department of Agriculture ("USDA") to Talbert.

94. The exclusion of the sales/transfer between Talbert and the USDA covers(ed) up and conceals(ed) the unsupported rise in value of the Subject Property and Talbert's role in the Enterprise.

. . .

102. If Mullins would have included the USDA January 4, 2024, sales/transfer of the Subject Property to Talbert, it would have triggered inquiry/investigation into said sales/transfer – where just a review of the mold and structural issues, the Subject Property would not be valued at and/or near $212,000.00; and, that Mullins could not rely upon the sales comparables on the Appraisal, as said comparables were functionally and dissimilar to the Subject Property.

103. Therefore, Defendants' implementation of the Enterprise's Scheme resulted in a gross overvaluation of the Subject Property by more than $39K.

104. In addition to the gross overvaluation of the Subject Property, Mullins' exclusion of the USDA/Talbert sales/transfer resulted in the failure to discover mold, water intrusion and structural issues with the Subject Property, where the VA, as a minimum requires that properties that qualify for its loan guarantee program must be safe, structurally sound, and sanitary.

. . .

106. The Enterprise driven illusionary rise in property values also benefits Mullins, as the need for appraisal services rises as a result of the Community's socioeconomic growth; and, predatory lending institutions who prefer to give business to an appraiser that is willing to perform quick appraisals that ensure a home/property is appraised

4

at an overinflated value.

*Id.* at 25–28 (footnote omitted).[5]

Ms. Boyd attached a scanned copy of Mr. Mullins's Appraisal, but the document is not fully legible. Docket No. 1-1, pp. 15–31. However, most notably, the Appraisal reports that the Veteran Affairs Regional Loan Center in Atlanta, Georgia assigned Mullins to appraise the Subject Property. *Id.* at 15.

Though not specific to Mr. Mullins, Ms. Boyd's Complaint further alleges that the defendants engaged in the following racketeering activities: mortgage fraud; wire fraud; mail fraud; bank/financial institution fraud; monetary transactions involving racketeering proceeds; laundering of monetary instruments; retaliation against a witness, victim, or an informant. *Id.* at 28–44. Ms. Boyd contends that these racketeering activities are related because the actions "had the same or similar purpose, results, participants, victims, and methods of commission" such that the defendants have defined roles to further the Enterprise's objectives. *Id.* at 44. In her Complaint, Ms. Boyd states:

> 175. Specifically, upon information and belief, Defendants simultaneously depend on each other as crucial parts of the Enterprise – where: 1) PHRA Defendants serves as a proverbial "storefront" the home/properties that Jakes sells through [PHRA], 2) Talbert depends upon Jakes and PHRA Defendants to bring socioeconomic growth to the City of McMinnville and Warren County, which in turn, brings business/profits to Homeland Community Bank; and, 3) Mullins benefits from serving as a preferred appraiser for the Community and financial institutions.

*Id.* at 45.

Mr. Mullins is the only defendant that resides in the Middle District of Tennessee. *Id.* at 5–

---

5 Quotations from the Complaint are verbatim.

6. The other defendants and Ms. Boyd reside in Warren County, which is in the Eastern District of Tennessee. *Id.*

In his supporting Memorandum (Docket No. 16), Mr. Mullins initially addresses the allegedly excluded January 2022 sale and readability of Ms. Boyd's scanned copy of the Appraisal. Docket No. 16, p. 6. While Ms. Boyd did provide a copy of the Appraisal, the Multiple Listing Service ("MLS") section is illegible. Docket No. 1-1, p. 30. Mr. Mullins therefore attached a clear copy[6] to his supporting Memorandum. Docket No. 16-1. The listing referred to the January 2022 sale and described the condition of the property at that time. Docket No. 16, p. 6. During that time, the Subject Property was occupied by squatters and sold "sight unseen." *Id.* at 6–7. Mr. Mullins argues that when Defendant Talbert acquired the Subject Property "as is," he accepted the risk and liability associated with evicting squatters before selling the Subject Property to Defendant Jakes. *Id.* at 7. Therefore, the increase in value between the January 2022 and April 2022 sales is "easily substantiated" by the costs necessary to evict the squatters. *Id.* While Mr. Mullins acknowledges he was mistaken to write that there were no other sales in the past 36 months, his Appraisal included the listing that mentioned the sale. *Id.* He argues that his mistake was a mere oversight and not an action to further a criminal enterprise. *Id.*

Furthermore, while Ms. Boyd alleges that the defendants actions "demonstrate that they function in concert" (Docket No. 1, p. 12), Mr. Mullins maintains that he has never communicated with any of the other defendants. Docket No. 16, p. 7. He argues that Ms. Boyd has not alleged

---

6 As a general rule, a court is not to consider matters outside of the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See e.g.*, *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013). However, documents attached "'to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir.1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)).

that evidence exists to support her claim that the defendants worked as an enterprise beyond acknowledging that he performed the Appraisal. *Id.* at 8. Specifically, Mr. Mullins highlights that no other victim has joined Ms. Boyd in her legal endeavor, and the potential victims that Ms. Boyd mentioned in her Complaint did not purchase homes appraised by Mr. Mullins. *Id.* In response, Ms. Boyd argues that an enterprise need not have a formal structure or hierarchy to constitute an "association-in-fact" enterprise. Docket No. 29, p. 10. Mr. Mullins replies, stating that Ms. Boyd failed to factually allege that he associated with the other defendants for any purpose, let alone directed the activities of the other defendants. Docket No. 31, p. 3.

### III. LAW AND ANALYSIS

#### A. Motions under Federal Rule of Civil Procedure 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'merely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Id.*, *quoting Twombly*, 550 U.S. at 557 (internal brackets omitted).

When ruling on a defendant's motion to dismiss, the court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). The court should allow

7

"a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. However, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555. "'[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss," *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted), and mere recitation of the elements of a cause of action "or an "unadorned, the-defendant-unlawfully-harmed-me accusation" will not do, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. While the court must accept "as true all non-conclusory allegations in the complaint," *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009), it does not have to accept unsupported legal conclusions, *Iqbal*, 556 U.S. at 678.

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks and citation omitted). Pro se litigants, however, are not exempt from the requirements of Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F. 2d 591, 594 (6th Cir. 1989). The Court is not required to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life. Ins. Co.*, 518 F. 2d 1167, 1169 (6th Cir. 1975); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("a court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"). To demand otherwise would require the "courts to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments

and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F. 2d 1274, 1278 (4th Cir. 1985).

**B. Racketeer Influenced and Corrupt Organizations Act ("RICO") Claims**

The RICO statute, 18 U.S.C. § 1962, states:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)–(d).

To state a claim under the RICO statute, a plaintiff must plead: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

The conduct element does not concern "outsiders" of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). For this element, a plaintiff must plead that a defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* (emphasis in original). In general, an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). However, for an association-in-fact enterprise, a plaintiff must show that the enterprise is "simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009).

A "racketeering activity" consists of acts that are indictable under state or federal law, as

9

listed in 18 U.S.C. § 1961(1); while a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of [the RICO statute] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). However, when a plaintiff alleges only two acts of racketeering, that allegation is insufficient to state a RICO claim. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989); *see also Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008). Instead, a plaintiff must show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239 (emphasis in original). This requirement is otherwise known as the "relationship and continuity" test. *Id.* at 230.

Racketeering predicates are related when the actions "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). A plaintiff may demonstrate continuity by "proving a series of related predicates extending over a substantial period of time" or "that the predicates establish a *threat* of long-term racketeering activity." *H.J. Inc.*, 492 U.S. at 230. The predicates establish such a threat when "they are part of the regular way of doing business for an ongoing entity such as a criminal association or legitimate business." *Id.* However, "a defendant who engages in several different forms of fraud for a single purpose, to defraud a single victim through activities surrounding one construction project" has not engaged in more than one criminal scheme. *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994).

## C. Jurisdiction

District courts have original jurisdiction to resolve civil actions that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. District courts also have

10

Case 3:25-cv-00333   Document 40   Filed 07/15/25   Page 10 of 15 PageID #: 430

supplemental jurisdiction over state claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, 28 U.S.C. § 1367 states:

> **(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if —
>
> . . .
>
> **(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> **(3)** the district court has dismissed all claims over which it has original jurisdiction, or
>
> **(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C § 1367(c).

### D. Venue

### 1. Motions under Federal Rule of Civil Procedure 12(b)(3)

Pursuant to Fed. R. Civ. P. 12(b)(3), a party may file a Motion to Dismiss based on improper venue:

> **(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> . . .
>
> (3) improper venue.

### 2. 28 U.S.C. § 1391

Addressing the issue of venue generally, 28 U.S.C. § 1391(b) states:

> **(b) Venue in general.**—A civil action may be brought in—

11

Case 3:25-cv-00333    Document 40    Filed 07/15/25    Page 11 of 15 PageID #: 431

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

A court considering the issue of venue must initially determine whether the case falls within one of these three categories. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). "If it does, venue is proper," though the court in its discretion may still dismiss or transfer the case in the interest of justice and for the sake of convenience of parties and witnesses under 28 U.S.C. § 1404(a), "a codification of the doctrine of *forum non conveniens*." *Id.* at 56, 60. "[I]f it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)," *id.* at 56, which prescribes this outcome for "a case laying venue in the wrong division or district." 28 U.S.C. § 1406(a).

For corporations, 28 U.S.C. § 1391(d) states:

> **(d) Residency of corporations in States with multiple districts.**—For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

There are two kinds of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

(2011). A court has general personal jurisdiction over any out-of-state corporation (*i.e.*, a "foreign" corporation) that has a "continuous and systematic" presence in the same state as the court. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945). However, a court may assert specific personal jurisdiction over a foreign corporation when the legal "issues deriv[e] from, or connect[] with, the very controversy that established jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)).

**E. The Case at Bar**

**1. Mr. Mullins**

To state a claim under the RICO statute against Mr. Mullins, Ms. Boyd must plead that he was engaged in conduct of an enterprise through a pattern of racketeering. *See Heinrich*, 668 F.3d at 404. Regarding the RICO claims, Ms. Boyd alleges that Mr. Mullins performs inflated appraisals to receive preferential treatment from financial institutions. Docket No. 1, pp. 13, 45.

Because Ms. Boyd acquired a VA guaranteed mortgage loan, it was the VA that assigned Mr. Mullins to appraise the Subject Property. Docket No. 1-1, p. 15. Therefore, Mr. Jakes, Mr. Talbert, and PHRA Defendants were not involved with Mr. Mullins's assignment. *Id.* Similarly, since Mr. Jakes and PHRA Defendants are not lenders, they have no influence on Mr. Mullins's future assignments. Docket No. 1, pp. 5–6. Mr. Talbert, in his official capacity at Homeland Community Bank, could be a lender that preferentially hires Mr. Mullins, but Ms. Boyd did not raise that allegation. *Id.* at 12–13. Thus, Mr. Mullins was engaged in his own affairs, not a criminal enterprise's affairs with the other defendants, when he performed the appraisal. *See id.* at 25; *Reves*, 507 U.S. at 185. Without satisfying the conduct element, Ms. Boyd has not successfully stated a claim under the RICO statute against Mr. Mullins. *See* Docket No. 1, p. 25; *Reves*, 507

13

U.S. at 185; *Heinrich*, 668 F.3d at 404.

Furthermore, while the alleged racketeering activities are related, they are related because the activities stem from the same isolated event. *See Vemco, Inc.*, 23 F.3d at 135. Because Ms. Boyd is the only victim named and the alleged racketeering activities surround one property sale, Ms. Boyd has failed to plead that Mr. Mullins has engaged in a pattern of racketeering activities. Docket No. 1, p. 17–19. The potential other victims Ms. Boyd mentioned in her Complaint did not purchase property that Mr. Mullins appraised. *Id.* at 19–23. Therefore, if Mr. Mullins is not associated with the other home renovations and sales that the other defendants engaged in, his conduct does not pose a threat of long-term racketeering. *See H.J. Inc.*, 492 U.S. at 230. As Mr. Mullin's actions do not constitute a pattern of racketeering, Ms. Boyd has not stated a claim against him under the RICO statute. *See Heinrich*, 668 F.3d at 404.

If the Court dismisses the RICO claims against Mr. Mullins, the remaining claims against him are violations under Tennessee law. Docket No. 1, pp. 53–63. Therefore, the Court may decline to exercise supplement jurisdiction over Ms. Boyd's related state claims. *See* 28 U.S.C. § 1367(c).

## 2. PHRA Defendants, Jakes, and Talbert

If the Court dismisses the RICO claims against Mr. Mullins, the Middle District of Tennessee would not be the proper venue for this case. *See* 28 U.S.C. § 1391. Mr. Talbert, Mr. Jakes, and PHRA Defendants are all residents of Warren County, Tennessee, in the Eastern District of Tennessee. Docket No. 1, pp. 5–6. Within PHRA Defendants is PHRA, a Tennessee corporation, that almost exclusively operates in Warren County, Tennessee. Therefore, PHRA does not have a "continuous and systematic" presence in the Middle District of Tennessee such that the Court could exercise general personal jurisdiction. Docket No. 1, p. 6; *See Goodyear*

*Dunlop Tires Operations, S.A.*, 564 U.S. at 919. Furthermore, the legal issues at bar are connected to the Subject Property, which is in Warren County, Tennessee; thus, the Middle District of Tennessee could not exert specific personal jurisdiction over PHRA. Docket No. 1, p. 5; *see Int'l Shoe Co.*, 326 U.S. at 317. Overall, if the claims against Mr. Mullins are dismissed, the remaining parties and the events that gave rise to the claims are situated in the Eastern District of Tennessee, making the Middle District of Tennessee an improper venue. *See* 28 U.S.C. § 1391(b).

### IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Mr. Mullins's Motion to Dismiss (Docket No. 15) be **GRANTED**, and this action be **DISMISSED** as to Defendant Mullins.

The undersigned further **RECOMMENDS** that the Motions for Transfer of Venue (Docket Nos. 10, 13, 26) be **GRANTED** and this action be **TRANSFERRED** to the Eastern District of Tennessee.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**